*850 OPINION OF THE COURT
Dennis S. Cohen, J.
Defendant is charged, by indictment No. 2009-017, with driving while intoxicated and crossing hazardous markings (Vehicle and Traffic Law § 1192 [3]; § 1193 [1] [c]; § 1128 [d]).
On June 8, 2009, defendant filed with the court an omnibus motion. Defendant moves for dismissal of the indictment in the furtherance of justice (CPL 210.40). Defendant also refers to Criminal Procedure Law § 210.20 (1) (a) and (b). Therefore, the court presumes defendant is also moving to dismiss the indictment on the grounds that the indictment is defective and the evidence before the grand jury was not legally sufficient to establish the offenses charged. In support of these motions, defendant asserts that there was no “alcohol” in his blood, only ethylene glycol, more commonly known as antifreeze. Defendant further asserts that there was no “voluntary” intoxication, but instead a suicide attempt. Defendant cites People v Litto (8 NY3d 692 [2007]) in support of his position.
Defendant additionally moves for suppression of statements or, in the alternative, a Huntley hearing. A Sandoval hearing prior to the time of trial was also requested.
The People filed an answering affirmation. The People oppose dismissal of the indictment but do not oppose an in camera inspection of the grand jury minutes. The People argue that ethylene glycol is “alcohol” and, therefore, defendant had alcohol in his blood and could be charged with driving while intoxicated. The People also cite Litto (8 NY3d 692 [2007]) in support of their position.
The People also oppose suppression of statements, but do not oppose a Huntley hearing. The People oppose any hearings on the legality of the stop or probable cause for the arrest. The People do not oppose a Sandoval hearing prior to trial.
The court granted defendant’s motion to inspect the grand jury minutes. The minutes were reviewed in camera.
In this case, a lab report of the analysis of defendant’s blood was introduced before the grand jury. Defendant’s blood contained ethylene glycol. The lab report read: “Drug Blood Ethylene Glycol: 0.42% (w/v) (4.2 mg/ml.)” (Grand jury exhibit 3.) Dr. Jeanne Beno, of the Monroe County Medical Examiner’s Office, also testified. Her testimony described ethylene glycol as antifreeze but indicated that it is a form of alcohol. She also explained the effects of ethylene glycol on the human body.
*851 There was no evidence that defendant’s blood contained ethyl alcohol. In fact, the lab report specifically read: “Blood Alcohol: Negative” (grand jury exhibit 3).
On the basis of this evidence, the grand jury indicted defendant for driving while intoxicated.
As previously stated, both defendant and the People cite Litto (8 NY3d 692 [2007]) in support of their respective positions.
In Litto, the Court of Appeals found that the term “intoxication” referred to the consumption of alcohol, not drugs.
This court must now determine whether the consumption of alcohol refers to ethyl alcohol or any substance chemically defined as an alcohol.
The sufficiency of the driving while intoxicated count hinges on this one legal issue.
This court could find no reported case directly on point. However, the language used and history recited by the Court of Appeals in Litto (8 NY3d 692 [2007]) was highly instructive on the issue before this court.
First, the Court of Appeals articulated the method for interpreting a statute. The Court of Appeals stated:
“The Court’s primary goal is to interpret a statute by determining, and implementing, the Legislature’s intent. Analysis begins with the language of the statute itself. Next, in construing a statute, the courts frequently ‘follow the course of legislation on the subject, the lineage of the act being thought to illuminate the intent of the legislature.’ The Court additionally looks to the purposes underlying the legislative scheme. . . .
“The plain meaning of the language of a statute must be interpreted ‘in the light of conditions existing at the time of its passage and construed as the courts would have construed it soon after its passage’ ” (id. at 697 [citations omitted]).
Next, the Court of Appeals thoroughly detailed the history of driving while intoxicated statutes. This court paid particular interest to the definitions of “intoxication” to decipher the legislative intent for the term “alcohol.”
The first driving while intoxicated statutes were enacted in 1910 (id.).
Relevant here, in 1910, Black’s Law Dictionary defined “intoxication” as:
*852 “The state of being poisoned; the condition produced by the administration or introduction into the human system of a poison. But in its popular use this term is restricted to alcoholic intoxication, that is, drunkenness or inebriety, or the mental and physical condition induced by drinking excessive quantities of alcoholic liquors, and this is its meaning as used in statutes, indictments, etc.” (Black’s Law Dictionary 652 [2d ed 1910] [emphasis added], quoted in Litto, 8 NY3d at 698.)
Subsequently, in 1919, People v Weaver (188 App Div 395 [1919]) was decided by the Appellate Division, Third Department.
Relevant here, that Court, after discussing the effects of the consumption of alcoholic beverages, formulated “a rule that . . . one is ‘intoxicated when he has imbibed enough liquor to render him incapable of giving that attention and care to the operation of his automobile that a man of prudence and reasonable intelligence would give’ ” (Litto, 8 NY3d at 698 [emphasis added], quoting Weaver, 188 App Div at 400). At that time, while “liquor” was not defined in the driving while intoxicated statutes, the legislature did define it in the Liquor Tax Law. “Liquors” meant “all distilled or rectified spirits, wine, fermented and malt liquors” (People v Schwartz, 183 App Div 367, 368 [1918], affd 224 NY 647 [1918]; see also People v Cashdollar, 188 App Div 9 [1919]).
Based upon these definitions, which were contemporaneous with the original statutes, it is clear that at the time the first driving while intoxicated statutes were drafted by the legislature and interpreted by the courts, “intoxication” meant intoxication by the consumption of alcoholic beverages; to wit: spirits, wine, beer, and liquor.
Over the years, the driving while intoxicated statutes have evolved. However, the meaning of “intoxication” has not changed in any appreciable way.
In 1941, amendments to the law were drafted to include scientific testing of blood alcohol content (Litto, 8 NY3d at 699). The bill sponsor in the Assembly wrote, “different drinkers are differently affected by the same amount of alcohol beverages” and, thus, “the only fair test of intoxication is to determine the degree of alcohol concentration in the blood by scientific tests” (Letter from Assembly Sponsor, Apr. 19, 1941, Bill Jacket, L 1941, ch 726, at 41 [emphasis added], quoted in Litto, 8 NY3d at 700).
*853 Therefore, even in 1941, it is clear that the legislative intent continued to be to define “intoxication” by the consumption of alcoholic beverages. Alcoholic beverages then being defined as wine, beer, and liquor (Pincus v Kall, 29 NYS2d 586 [1941], affd 263 App Div 807 [1941]).
Now, in 2009, nearly 100 years after the first legislation was signed into law, the terminology has changed but the meaning, again, has not.
The term “intoxicated” is now defined using the phrase “consumed alcohol” (see Vehicle and Traffic Law art 31; CJI2d[NY] Vehicle and Traffic Law § 1192 [3]), in place of “imbibed enough liquor.” But, “alcohol” has virtually the same meaning as “liquor” did in 1919. While “alcohol” is not defined in the Vehicle and Traffic Law (as “liquor” was not in 1910), the legislature has defined it in the Alcoholic Beverage Control Law. “ ‘Alcohol’ means ethyl alcohol, hydrated oxide of ethyl or spirit of wine” (Alcoholic Beverage Control Law § 3 [2]). “Alcoholic beverage[s]” are defined as spirits, wine, liquor, beer, cider and every liquid containing alcohol and capable of being consumed by a human being (Alcoholic Beverage Control Law § 3 [1]).
Therefore, the conclusion is inescapable that “intoxication” meant in 1910 and still means today intoxication by the consumption of alcoholic beverages. Alcoholic beverages meaning spirits, wine, liquor, beer, cider and every liquid containing alcohol and capable of being consumed by a human being. In other words, ethyl alcohol. Ethyl alcohol is also known as ethanol or drinking alcohol.
This conclusion is supported by the plain meaning of the words.
“We commonly think of alcohol as ethanol [aka ethyl alcohol]” (grand jury minutes, testimony of Dr. Jeanne Beno, at 7). Ethyl alcohol “is the intoxicating agent in liquors” (Merriam-Webster Unabridged Collegiate Dictionary [2009], ethanol; see also Wikipedia, Ethanol, http://en.wikipedia.org/wiki/Ethanol [accessed Sept. 18, 2009]).
Ethylene glycol, while technically defined as an alcohol, is not an alcoholic beverage. It is not manufactured for human consumption and it is hazardous to human health (see People v M&H Used Auto Parts & Cars, Inc., 22 AD 3d 135 [2005]; see also Merriam-Webster Unabridged Collegiate Dictionary [2009], ethylene glycol; Wikipedia, Ethylene glycol, http://en.wikipedia. *854 org/wiki/Ethylene_glycol [accessed Sept. 18, 2009]). “Where we most commonly see ethylene glycol is in anti-freeze” and “it’s a solvent that’s used, an industrial solvent, and it has many uses there” (grand jury minutes, testimony of Dr. Jeanne Beno, at 12).
This conclusion is also supported by the Vehicle and Traffic Law and the rules and regulations of the Department of Health. The Vehicle and Traffic Law requires the Department of Health to “issue and file rules and regulations approving satisfactory techniques or methods of conducting chemical analyses of a person’s blood, urine, breath or saliva” (Vehicle and Traffic Law § 1194 [4] [c]). The rules and regulations of the Department of Health specify the acceptable methods and techniques to test for alcohol and define “blood alcohol concentration” only in terms of “ethanol,” which as previously noted is ethyl alcohol (10 NYCRR 59.1 [h]).
Therefore, to be charged with driving while intoxicated, a defendant must be “intoxicated” by the consumption of alcohol, more specifically an alcoholic beverage.
A defendant may not be charged with driving while intoxicated based upon the presence of ethylene glycol.
The court must dismiss the count of the indictment charging driving while intoxicated.
The court will also dismiss the traffic infraction on the ground that there was insufficient information for the court to determine exactly what lines were crossed at what point in the road so as to constitute crossing hazardous road markings.
The dismissal of both counts will also allow the People to appeal this court’s decision and order, if they so choose.
As in Litto (8 NY3d at 707), this court fully appreciates that this ruling will allow allegedly reprehensible conduct to go unpunished because of a gap in the law. The court does not render this decision lightly. “However, a determination by this [c]ourt that intoxication in Vehicle and Traffic Law § 1192 (3) includes the use of [ethylene glycol] would improperly override the legislative policy judgment” (id.).
Now, it is therefore ordered that defendant’s motion to inspect the grand jury minutes is granted and, after an inspection of the grand jury minutes, defendant’s motion to dismiss the indictment is granted.